IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEVIN DININGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00927 |
| | ) | |
| BOONE COUNTY, INDIANA, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Introductory Statement**

1.  Like many governmental entities, Boone County, Indiana ("the County") maintains and operates a Facebook page. It uses this page, which is formally operated by the Boone County Commissioners (the County executive), to post information concerning initiatives, events, and other matters that might be of interest to persons in Boone County. On April 14, 2022, the County posted to its Facebook page an open letter, signed by all three of the Boone County Commissioners, concerning delays in a "justice center expansion project" of significant local interest and seeking to place blame for these delays on the President of the Boone County Council. In response to the posting of this open letter, Kevin Dininger used Facebook's "comment" function to indicate that, due in part to the letter, he intended to vote for a challenger who was running to become a Boone County Commissioner rather than for the incumbents. The County responded swiftly to Mr. Dininger's comment by limiting or disabling any comments on the post, an act that had the effect of deleting Mr. Dinginer's comment. Mr. Dininger then made a post to his personal Facebook page, and possibly to another Facebook page not operated by the County, concerning the manner in which the County disenabled comments on its posts. In response to this, the County "blocked"

1

him from its Facebook page altogether. This serves to prevent Mr. Dininger not only from posting comments to the County's Facebook page but also from accessing the page at all. The County's action in blocking Mr. Dininger from its Facebook page unjustifiably impinges on Mr. Dininger's rights under the First Amendment. Declaratory and injunctive relief is appropriate.

**Jurisdiction, Venue, and Cause of Action**

2. The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

6. Kevin Dininger is an adult resident of Boone County, Indiana.

7. Boone County, Indiana, is one of Indiana's ninety-two counties and is located in central Indiana.

**Factual Allegations**

8. Facebook.com ("Facebook") is a social media platform that allows users to create and maintain user-specific pages to "post"—and thereby disseminate—videos, photographs, messages, or other information to persons identified as their "friends" on Facebook and to other individuals or to the public at large. A user's Facebook page is occasionally referenced as that user's "profile" or "timeline."

9. Facebook also allows users to interact with other individuals by "commenting" on users' Facebook posts or on other comments that have been made on Facebook posts. Users may also

"share" Facebook posts that have been made by other individuals or organizations, thereby causing someone else's Facebook post to appear on a user's own Facebook page and thus increasing the number of persons who view that Facebook post.

10. Like many governmental agencies and other governmental bodies and officials, Boone County, Indiana maintains and operates a Facebook page. Its Facebook page is available at https://www.facebook.com/LivingINBooneCounty. This Facebook page is formally operated by the Boone County Commissioners, the County's executive.

11. The County's Facebook page can be viewed by the public and, in the past, anyone with a Facebook account has been able to post a comment in response to the County's posts or in response to other user comments that have been made on those posts.

12. The County uses its Facebook page to post, and thereby disseminate, information about initiatives, events, and other matters that it believes to be relevant or useful to the residents of Boone County.

13. The County has allowed other Facebook users to "comment" on many of its Facebook posts. Users occasionally did so in order to express their opinions concerning the County or the information that the County had shared, to share additional information related to the County's Facebook posts, or to pose questions to the County.

14. Boone County officials are currently contemplating the expansion of a "justice center." According to media reports, the project is anticipated to cost $58 million and would not only include the expansion of the Boone County Jail but also would allow multiple county departments to move to a larger center. The project has generated a significant amount of local interest and, while the Boone County Commissioners have publicly indicated that they are in favor of the project as proposed and that they believe that further delays could increase the cost of the project,

the Boone County Council (which must approve the funding for the project) has indicated that it needs additional information before voting on the project.

15. On April 14, 2022, the County posted the following open letter to its Facebook page:



Portions of this image appear slightly off-set due exclusively to formatting undertaken by Mr. Dininger's attorney and this not appear in the County's Facebook post itself.

16. Mr. Dininger felt that it was inappropriate for the County (that is, the Boone County Commissioners) to publicly criticize the President of the Boone County Council in this manner

4

and further felt that it was not inappropriate for the Boone County Council to seek additional information in order to ensure the absence of any feasible alternatives before approving such a costly project, particularly given that the project would likely be funded in part through an additional tax on Boone County residents.

17. In response to this Facebook post, Mr. Dininger therefore posted a comment on the County's Facebook page wherein he stated as follows:

> And with this letter, I have decided to vote for Tim Beyer for Boone County Commissioner.

At the time that Mr. Dinginger made this post, Mr. Beyer was running as a challenger in the Republican primary election to serve as a Boone County Commissioner. In his comment, Mr. Dinginger also provided a link to the Facebook page of Mr. Beyer's campaign. Mr. Beyer has since defeated the incumbent in the primary election and has advanced to the general election in November.

18. Shortly after he made this comment, Mr. Dininger noticed that the settings for several of the County's Facebook posts, including the April 14th post on which he commented, had been altered. Whereas previously Mr. Dininger and others were able to use Facebook's "comment" function to comment on posts made to the County's Facebook page, the settings had been altered so that he was no longer able to do so. Instead, under many (but not all) of the County's Facebook posts in April and very early May of 2022, a message was displayed indicating that the County had "limited who can comment on this post" and no comments are publicly displayed. On older posts, however, individuals' comments still appear and any person who has not been "blocked" from the County's Facebook page may comment on the County's posts.

19. Mr. Dininger does not know whether the message indicating that the County had "limited who can comment on this post" means that no one can comment on the County's Facebook posts

other than (perhaps) the County itself, or whether it means that some subset of Facebook users may still comment on the County's posts while others are not able to do so.

20. At least on its Facebook posts that were made on or about May 7th or thereafter, however—and there have been several—the County for a period resumed allowing comments to its Facebook posts, and any Facebook user who had not been "blocked" from the County's Facebook page could post such comments to the County's Facebook page.

21. In any event, on April 15, 2022, Mr. Dininger made a post—to his own personal Facebook page—concerning the County's restriction on who may post comments on its Facebook page. Specifically, he posted as follows:



Kevin J Dininger
Apr 15 ·

Living in Boone County - Indiana is Facebook page ran by the Boone County Government, along with the page is a website www.livinginboonecounty.com.

Recently they published the statement you see below BUT limited who could comment on the post. I'm wondering,

1. Because it is a government run site are they legally allowed to do that?

2. Even if it legal is this the type of government we want?

What are your thoughts?

And really wondering what people like Rob Kendall, Abdul-Hakim Shabazz and Guy A. Relford might have to say on this...

As his post indicates, Mr. Dininger attached to this Facebook post a copy of the open letter that the County had posted to its own Facebook page the day before. In making this post, he "tagged"

three well-known members of the Indianapolis-area media—Rob Kendall, Abdul-Hakim Shabazz, and Guy Relford—an act that had the effect of making sure these three individuals received a notification of his Facebook post.

22. In response to Dininger's criticism, the County swiftly "blocked" him from its Facebook page.

23. While logged into Facebook, a Facebook user who is blocked from a Facebook page is not able to visit the Facebook page or to view any posts or comments on the page, and is not able to post his own comments in response to Facebook posts or in response to any comments made in response to the posts. Insofar as he cannot access the Facebook page from which he has been blocked, he is also not able to "share" Facebook posts from the page through his own personal Facebook page.

24. "Sharing" a Facebook post allows a user to disseminate the post to his own Facebook "friends," to republish the post on his own Facebook page, and, if he is inclined, to add his own commentary concerning the post.

25. The County's action in "blocking" Mr. Dininger therefore had the effect not only of deleting any comments that Mr. Dininger had previously made on the County's Facebook page but also of preventing Mr. Dininger from even viewing or otherwise accessing the County's Facebook page while logged into Facebook and of prohibiting him from commenting on or sharing the County's Facebook posts in the future.

26. Mr. Dininger has been blocked from the County's Facebook page due exclusively to the viewpoints that he expressed in his Facebook comment and his subsequent Facebook post. This represents improper viewpoint-based discrimination and is not supported by any governmental interest, let alone a compelling one.

27. Mr. Dininger is concerned about issues of importance to his community and his state as well as about the actions and positions of his elected officials, and frequently shares his opinions and other information about these issues with other persons. He would like to be able to once again access the information posted to the County's Facebook page and, to the same extent that other Facebook users are allowed to do so, to comment on posts or "share" posts made to that Facebook page.

28. To the extent that the County's actions have resulted in the deletion of previous comments made by Mr. Dininger to the County's Facebook page, Mr. Dininger would also like his deleted comments to be restored so that Facebook users may view these comments.

29. The blocking of Mr. Dininger from the County's Facebook page impinges on Mr. Dininger's liberty interest in engaging in expressive activity and in receiving information, and therefore implicates the procedural component of the Due Process Clause of the Fourteenth Amendment.

30. At the time that Mr. Dininger was blocked from the County's Facebook page, he was not provided with any notice, either of the decision to block him from the Facebook page or of the reasons for this decision, nor was he provided with an opportunity to contest this decision.

31. On information and belief, by practice or policy the County does not provide such notice or any opportunity to be heard to Facebook users that are blocked from his Facebook page.

32. As a result of the actions or inactions of the County, Mr. Dininger is suffering irreparable harm for which there is no adequate remedy at law.

33. At all times the County has acted or refused to act under color of state law.

**Legal Claim**

34. The actions of the County violate Mr. Dininger's rights under the First Amendment to the

United States Constitution.

35. The actions of the County violate Mr. Dininger's rights under the Fourteenth Amendment to the United States Constitution.

**Request for Relief**

    **WHEREFORE,** the plaintiff respectfully requests that this Court do the following:

1. Accept jurisdiction of this cause and set it for hearing.

2. Declare that the defendant has violated the rights of the plaintiff for the reasons described above.

3. Issue a preliminary injunction, later to be made permanent, (a) requiring the defendant to unblock the plaintiff from the defendant's Facebook page, (b) requiring the defendant to take any and all steps necessary to restore the plaintiff's comments to the defendant's Facebook page to the same extent as other users' comments are authorized, (c) prohibiting the defendant from blocking the plaintiff in the future based on the content or viewpoint of the plaintiff's speech, and (d) requiring that the defendant provide notice and an opportunity to be heard prior to blocking persons from its Facebook page.

4. Award the plaintiff his costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

5. Award all other proper relief.

Gavin M. Rose
ACLU of Indiana
1031 E. Washington St
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
grose@aclu-in.org

*Attorney for the plaintiff*
